UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DUJUAN O'NEAL #203912,　　　　　　　　　Case No. 2:19-cv-0032

　　　　　Plaintiff,　　　　　　　　　　　　Hon. Gordon J. Quist
　　　　　　　　　　　　　　　　　　　　　　U.S. District Judge
　v.

THOMAS JOHNSON, et al.,

　　　　　Defendants.
_____/

# REPORT AND RECOMMENDATION

## Introduction

This is a civil rights action brought by state prisoner DuJuan O'Neal pursuant to 42 U.S.C. § 1983. In a complaint, O'Neal alleged claims of retaliation, in violation of the First Amendment, against Correctional Officers Johnson, Lemmerman, McKinney, Churchhill,[1] and Prison Counselor Wonnacott.[2] (*See* ECF No. 1.) Defendants' retaliatory acts allegedly took place at the Chippewa Correctional Facility in September 2018. O'Neal claims that these retaliatory acts were tied to his complaints of racism and overcrowding. (ECF No. 1.)

---

[1]　In its screening opinion, the Court dismissed all claims against Churchill. (ECF No. 6.)

[2]　This name is spelled "Winncott" on the docket sheet.

1

Defendants Johnson, Lemmerman, McKinney, and Wonnacott have filed motions for summary judgment; O'Neal has responded[3]; and Defendants have replied. (ECF No. 23, 28, and 30.) The undersigned respectfully recommends that this Court:

- dismiss O'Neal's retaliation claims against Defendants Johnson, Wonnacott and McKinney without prejudice because O'Neal has failed to exhaust his administrative remedies with respect to these claims,

- deny Defendants' summary judgment motion with regard to O'Neal's retaliation against Lemmerman for events on September 29, 2018.

**I.  Summary of Plaintiff's Allegations**

O'Neal complains about retaliation, in violation of the First Amendment, while he was housed at Chippewa Correctional Facility (URF). (ECF No. 1, PageID.8-9.) According to O'Neal, Defendants' retaliation against him began after he wrote a letter

---

[3]  O'Neal's response – ECF No. 28 – is postmarked October 29, 2019 and was filed with the Court on November 1, 2019. His response generally argues that he complied with the Michigan Department of Corrections (MDOC) grievance procedure. This pleading also asks the Court to order Defendants to produce emails, other documents and the MDOC policy on grievances. The Court notes that it issued a Case Management Order (CMO) on August 1, 2019. (ECF No. 22.) That CMO established an August 9, 2019 deadline for Defendants' motion for summary judgment on exhaustion; a September 23, 2019 deadline for the conclusion of discovery relating to exhaustion; an October 21, 2019 deadline for O'Neal's response; and a November 4, 2019 deadline for Defendants' reply. To the extent that ECF No. 28 is a motion for an order compelling discovery, the Court denies the motion as untimely. O'Neal's request for a compulsion order was filed well after the close of discovery and he offers no explanation for his untimely request. The Court notes, however, that O'Neal does not claim that additional grievances and/or misconduct reports are required for the Court to rule on Defendants' motion. Thus, the Court will address Defendants' motion on the merits at this time.

to the Warden of URF and a letter to the Director (presumably the Director of the Michigan Department of Corrections (MDOC)) that addressed racism and overcrowding in the prison. (*Id.*, PageID.6, 8-9.) According to O'Neal, these letters began a sequence of retaliatory acts against him, grievances filed by him, and misconduct reports against him.

O'Neal says that once Defendant Correctional Officer (CO) Johnson learned about the letters, he allegedly proclaimed that he did not want there to be an appearance of civil rights violations. (*Id.*) Then, according to O'Neal, an unidentified staff member removed the letters from the mailbox. (*Id.*)

Within days of Johnson's alleged proclamation, O'Neal was transferred within URF to C-Unit. (*Id.*) Upon arrival, O'Neal claims that Lemmerman informed him that Lemmerman knew about the letters and that Lemmerman "will show [him] racist." (*Id.*) O'Neal claims to have filed 14 or more grievances to correct these issues.[4] (*Id.*, PageID.6.) Allegedly, three of the grievances were authored on September 2 and 7, 2018. (*Id.*)

O'Neal says that, on September 16, 2018, he and McKinney had a verbal confrontation after McKinney called him a racial slur. (*Id.*)

O'Neal alleges that, on September 21, 2018, when he asked Lemmerman for permission to use the bathroom, Lemmerman told O'Neal that he would be receiving

---

[4] The table in Section IV summarizes all relevant grievances filed by O'Neal that were appealed through Step III. The record reflects that since September 13, 2018, O'Neal only pursued eight grievances through Step III. (*See* ECF No. 24-3.)

3

more tickets as a result of his use of the grievance procedure. (*Id.*, PageID.6-7.) O'Neal claims that Lemmerman said that he would be writing O'Neal a ticket "for having items on [O'Neal's] desk." (*Id.*, PageID.7.)

Then, on September 21, 2018, O'Neal asserts that he authored another grievance because Lemmerman and McKinney destroyed some of his personal and "legal"[5] property.[6] (*Id.*) Immediately after, Wonnacott allegedly advised O'Neal to "give up" the affidavits referred to in the alleged grievance. (*Id.*)

O'Neal claims that Lt. Pawley came to O'Neal's unit to discuss O'Neal's issues. (*Id.*) He further claims that Wonnacott, Lemmerman, and McKinney issued O'Neal a Class I misconduct because O'Neal complained to a supervisor.[7] (*Id.*)

Finally, on September 22, 2018, O'Neal asserts that Correctional Officer Newcomb pulled O'Neal out of the chow line and ordered O'Neal back to his unit. (ECF No. 1, PageID.7.) As O'Neal neared the chow hall desk, Lt. Pawley stopped him to ask what was happening. (*Id.*) O'Neal then explained everything regarding the retaliation issues to Lt. Pawley. (*Id.*)

---

[5] O'Neal does not elaborate in his statement of facts about what property was destroyed, or what "legal property" is. (ECF No. 1, PageID.7.) In his requested relief section, however, it appears that O'Neal alleges that Lemmerman and McKinney may have destroyed the transcripts of his criminal trial and related exhibits. (*Id.*, PageID.10.)

[6] After a careful review of the record, it is unclear what grievance was filed regarding the destruction of O'Neal's property or whether such a grievance was filed at all. (*See* ECF No. 24-3.)

[7] There is no record of O'Neal ever receiving a Class I misconduct. (*See* ECF No. 24-4.)

4

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that

5

the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination,

6

misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate

7

cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[8], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file

---

[8] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

8

an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[9]

---

[9] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

## IV. Relevant Grievances Appealed Through Step III

In their motion for summary judgment, Defendants identified a number of grievances that O'Neal filed with the MDOC and appealed through Step III. They claim that a review of these grievances will demonstrate that O'Neal has failed to exhaust his administrative remedies. These grievances are summarized below.[10]

| Grievance Number | Defendants Grieved at Step I | Issue Grieved at Step I | Outcome of Grievance | ECF No.24-3, PageID. |
|---|---|---|---|---|
| URF-18-10-2841-17b | Lemmerman | On 9.29.18, Lemmerman subjected him to racist language, harassing and degrading treatment, and retaliation. | Denied at Step I; denial upheld through Step III. | 112-116 |
| URF-18-10-2941-28b | None | URF supervisors failed to protect his health and safety, protect him from staff harassment. | Rejected at Step I for vagueness; rejection upheld through Step III. | 117-121 |
| URF-18-09-2749-17e | Lemmerman | On 9.21.18, Lemmerman subjected him to racist language and threats of sanction. | Denied at Step I; denial upheld through Step III. | 122-126 |
| URF-18-09-2750-17a | Lemmerman | On 9.22.18, Lemmerman called the kitchen and had him harassed in the food line. | Denied at Step I; denial upheld through Step III. | 127-131 |
| URF-18-09-2702-17a | McKinney | On 9.16.18, McKinney made several "derogatory" comments towards him. | Denied at Step I; denial upheld through Step III. | 132-136 |
| URF-18-09-2637-28e | Lemmerman and McKinney | On 9.7.18, Lemmerman and McKinney denied him use of the bathroom and subjected him to retaliation for complaining and writing letters. | Denied at Step I; rejected at Step II for being untimely; rejection upheld at Step III. | 137-141 |
| URF-18-09-2654-28c | Johnson, Lemmerman and McKinney | (1) Two letters of complaint were removed from the mailbox; (2) received no response for a grievance; (3) was told to be quiet; and (4) was being retaliated against. | Rejected at Step I for containing unrelated issues; rejection upheld through Step III. | 142-147 |

---

[10] In his complaint, O'Neal lists a number of grievances he claims he filed. (*See* ECF No. 1, PageID.8.) O'Neal did not, however, attach any of the documents associated with these grievances to his response. Accordingly, the Court has limited its review to the grievance documents it has before it.

10

| Grievance Number | Defendants Grieved at Step I | Issue Grieved at Step I | Outcome of Grievance | ECF No.24-3, PageID. |
|---|---|---|---|---|
| URF-18-09-2638-28b | Wonnacott | Sometime prior to 9.5.18, Wonnacott did not respond to his letters and kites; MDOC did not respond to alleged use of racial language and misconduct by McKinney and Lemmerman. | Rejected at Step I for not containing a clear, concise statement of issue being grieved; rejection upheld through Step III. | 148-153 |

## V. Misconduct Charges Issued to Plaintiff During Relevant Time Period, Identified by Defendants

In their motion for summary judgment, Defendants identified only two misconduct charges issued against O'Neal during September 2018. Hearings for both misconducts were held during October 2018. Defendants claim that a review of these Misconduct Appeals will demonstrate that O'Neal has failed to exhaust his administrative remedies. These Misconduct Appeals are summarized below.

| Person(s) Named | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| O'Neal | Out of Place (issued by Lemmerman). O'Neal was observed to exit a bathroom when he was restricted from leaving his housing unit. | 9.29.2018 | 10.18.18 | Found not guilty because a witness CO did not return the witness's questionnaire. O'Neal did not raise retaliation. | Nothing in the record found to support a finding. |
| O'Neal | Disobeying a Direct Order, Insolence (issued by Lemmerman). When asked for his ID card, O'Neal allegedly | 9.30.18 | 10.9.18 | Found guilty. O'Neal claimed harassment during the hearing but did not raise the issue of retaliation. | Nothing in the record found to support a finding. |

11

| Person(s) Named | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| | stated, "F[*]ck you racist b[*]tches." | | | | |

The documents provided by Defendants also reveal a misconduct report written by Lemmerman against O'Neal on September 12, 2018. (ECF No. 24-4, PageID.161.) Thus, a complete list of misconducts written against O'Neal in September would include the following:

| Person(s) Named | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| O'Neal | "VPR=8." | 9.12.18 | Waived his hearing and accepted sanctions. | Found guilty. | Nothing in the record found to support a finding. |

## VI. Analysis

### A. Failure to Exhaust Any Issue of Retaliation Against Lemmerman, Wonnacott, and McKinney Regarding Any False Misconducts

As stated above, when a prisoner claims that he received a retaliatory false misconduct ticket, he is required to raise the retaliation issue within his misconduct hearing or an appeal therefrom. *Siggers*, 652 F.3d at 693-94. Here, O'Neal complains about receiving retaliatory false misconducts from Lemmerman, Wonnacott, and McKinney.[11] To properly exhaust such a claim, O'Neal must have raised the issue of

---

[11] Among the false misconducts that O'Neal claims to have received is a Class I misconduct regarding dangerous contraband. (ECF No. 1, PageID.7, 10.) Nothing in the record supports O'Neal's claim that he was issued a Class I misconduct involving dangerous contraband.

retaliation during subsequent misconduct hearings regardless of whether the alleged false misconducts were Class I, II, or III. *Id*; MDOC PD 03.03.105 ¶¶ UUU-XXX.

As mentioned above, a review of the record shows that O'Neal received three misconduct tickets during September 2018. O'Neal received his first misconduct on September 12, 2018. (ECF No. 24-4, PageID.161.) It was a Class III misconduct for "VPR = 8."[12] (*Id*.) The misconduct report indicates that O'Neal waived his right to a Class III hearing and accepted the sanctions imposed by signing the applicable box on the report. (*Id*.) Because O'Neal did not raise the issue of retaliation during this misconduct hearing, the undersigned concludes that O'Neal's claim that this misconduct was retaliatory is not properly exhausted.

Second, on September 29, 2018, O'Neal received a Class II misconduct for being in a place that he was not authorized to be while he was on "Top-Lock" sanction. (ECF No. 24-4, PageID.160.) A misconduct hearing was reconvened on October 2, 2018, where O'Neal was found not guilty.[13] (*Id*., PageID.159.) The hearing report states that "The questionnaire was not returned by C/O Simmons indicating whether or not O'Neal was given permission to use the restroom." (*Id*.) A review of the record indicates that O'Neal did not raise the issue of retaliation during the misconduct hearing, nor did he appeal. (*Id*., PageID.159-160.) Thus, the undersigned again

---

[12]     According to the misconduct report, O'Neal received the "VPR = 8" misconduct for standing at the entrance of his cubical for several minutes. (ECF No. 24-4, PageID.161.)

[13]     No explanation was given as to why there was a reconvening of O'Neal's misconduct hearing or what may have occurred in the first misconduct hearing.

13

concludes that O'Neal's claim that this misconduct was retaliatory is not properly exhausted.

Third, on September 30, 2018, O'Neal received a misconduct charge. (ECF No. 24-4, PageID.158.) This was a Class II misconduct for disobeying a direct order and insolence. (*Id.*) During the misconduct hearing, O'Neal stated that Lemmerman was harassing him. (*Id.*, PageID.157.) O'Neal was found guilty because the "description of the violation meets the criteria of the charge" and because Lemmerman was found to be credible. (*Id.*) Because O'Neal received a Class II misconduct, he was required to file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Heyns*, 2014 U.S. Dist. LEXIS at *13-17. The record indicates that he did not. (ECF No. 24-4, PageID.157-158.) Thus, the undersigned again concludes that O'Neal's claim that this misconduct was retaliatory is not properly exhausted.

The undersigned respectfully recommends that the Court find that O'Neal failed to properly exhaust all administrative remedies regarding any of the allegedly retaliatory misconduct tickets.

### B. Failure to Properly Exhaust Any Grieveable Issues Against Defendants Johnson and Wonnacott

The record indicates that O'Neal complained about Johnson and Wonnacott in only one grievance each, and those grievances were rejected. (ECF No. 24-3, PageID.142-147;148-158.) Accordingly, the undersigned concludes that O'Neal failed to exhaust claims that would be grieveable against Johnson and Wonnacott.

Grievance **URF-18-09-2654-28c** is the only grievance in which O'Neal complains about Johnson. The grievance was rejected at Step I for containing

14

unrelated issues. (*Id.*, PageID.146.) The rejection was upheld through Step III. (*Id.*, PageID.144-142.) Grievances that are rejected for failure to satisfy the policy fail to demonstrate proper exhaustion. *Scott v. Amani*, 577 F.3d 642, 647 (6th Cir. 2009). Because the grievance was rejected for failing to satisfy MDOC policies, the undersigned concludes that O'Neal failed to properly exhaust his claims against Johnson in this grievance.

Like O'Neal's claims against Johnson, O'Neal complained about Wonnacott in only one grievance: grievance **URF-18-09-2638-28b**. This grievance was rejected at Step I because it failed to contain a clear, concise statement of the issue being grieved. (ECF No. 24-3, PageID.152.) The rejection was upheld through Step III. (*Id.*, PageID.150-148.) Again, grievances that are rejected for failure to satisfy the policy fail to demonstrate proper exhaustion. *Scott*, 577 F.3d at 647. Thus, the undersigned also concludes that O'Neal failed to properly exhaust his claims against Johnson.

### *C. Grievances Against Defendants Lemmerman and McKinney*

Six of the grievances listed in the table on pages 10 and 11 state complaints against Defendants Lemmerman and McKinney. Before addressing those grievances, the undersigned will note that Grievance **URF-18-10-2941-28b** does not clearly identify Lemmerman or McKinney. But this grievance was rejected at Step I for vagueness, and the rejection was upheld through Step III. (ECF No. 24-3, PageID.117-121.) Thus, this grievance does not support a finding that O'Neal exhausted his administrative remedies.

Grievance **URF-18-09-2654-28c**, which was discussed above with respect to Defendant Johnson, lists Defendants Lemmerman and McKinney. As noted, this grievance was rejected, so O'Neal cannot rely on it to prove that he exhausted his administrative remedies relating to the claim stated in this grievance.

Grievance **URF-18-09-2637-28e** lists both Lemmerman and McKinney. It was denied at Step I, but then rejected at Step II and III for being untimely. (*Id.*, PageID.141, 139, and 137.) Thus, O'Neal cannot rely on this grievance to prove that he exhausted his administrative remedies relating to the claim stated in this grievance.

Grievances **URF-18-09-2749-17e** (naming Lemmerman), **URF-18-09-2750-17a** (naming Lemmerman), and **URF-18-09-2702-17a** (naming McKinney) were denied on the merits and those denials were upheld through Step III. (ECF No. 24-3, PageID.122-126, 127-131, and 132-136.) But O'Neal failed to raise the issue of retaliation in these grievances. In grievance **URF-18-09-2749-17e**, O'Neal complained about Lemmerman using racial slurs against him and demanded that a video from September 21, 2018, be saved. (*Id.*, PageID.125.) In grievance **URF-18-09-2750-17a**, O'Neal asserted that Lemmerman verbally humiliated and disrespected him. (*Id.*, PageID.130.) In that grievance, O'Neal also claimed that Lemmerman called the kitchen to have O'Neal harassed while in the chow line. (*Id.*) In grievance **URF-18-09-2702-17a**, O'Neal alleged that McKinney made several racially derogatory statements toward him while he was on his way to the bathroom.

16

(*Id.*, PageID.135.) O'Neal failed to raise the issue of retaliation in these grievances. (*Id.*, PageID.125, 130, and 135.)

Because O'Neal failed to raise the issue of retaliation in these three grievances, the undersigned concludes that O'Neal failed to exhaust all administrative remedies in grievances **URF-18-09-2749-17e**, **URF-18-09-2750-17a**, and **URF-18-09-2702-17a**.

The final grievance under consideration by the Court is grievance **URF-18-10-2841-17b**. In this grievance, O'Neal asserted that Lemmerman retaliated against him on September 29, 2018. A portion of O'Neal's Step I grievance is shown below.

[Grievance form image: MICHIGAN DEPARTMENT OF CORRECTIONS PRISONER/PAROLEE GRIEVANCE FORM. Date Received at Step I: 10-3-18. Grievance Identifier: URF-18-10-2841-17B. Name: O'NEAL, DUJUAN. Number: 203912. Institution: URF. Lock Number: C-1-01. Date of Incident: 09/29/18. Today's Date: 10/01/18. Attempt to resolve: 09/30/18. GRIEVANT SPOKE WITH LT. PAWLEY ABOUT THE CONSISTENT HARASSMENT, AND DEGRADATION ISSUED BY SPECIFICALLY C/O LEMMERMAN, WHO SAID HE WOULD E-MAIL THE RUM ABOUT MOVING ME. STAFF: C/O LEMMERMAN. ON 09/29/18, GRIEVANT WAS SENT TO THE CONTROL CENTER, FOR CLASS II MISCONDUCT FOR OUT OF PLACE, WRITTEN BY C/O LEMMERMAN, FOR GOING TO RESTROOM WITHOUT AUTHORIZATION WHILE ON SANCTIONS. DURING REVIEW I EXPLAINED TO LT. PAWLEY THE SITUATION, AT WHICH TIME HE INDICATED THAT HE WOULD E-MAIL THE RUM ABOUT A MOVE. AT 1:05-1:15, LT. PAWLEY WAS IN C-UNIT, TALKING TO C/O LEMMERMAN. (THIS IS A BRIEF BACKGROUND NOT THE ISSUE). ISSUE: RETALIATION C/O LEMMERMAN. AS SOON AS LT. PAWLEY LEFT THE UNIT GRIEVANT WAS CALLED TO THE DESK BY C/O LEMMERMAN AND ASK WHAT DID I EXPECT TO HAPPEN BY GOING TO HIS SUPERVISOR, WITH MY "BITCHING". HE FURTHER STATED: "NOW YOU JUST GOT YOUR STUPID BLACK ASS ANOTHER TICKET." LEMMERMAN THEN CALLED ME SEVERAL NAMES NONE O'NEAL, AS GRIEVANT ATTEMPTED TO WALK AWAY HE GAVE ME A DIRECT ORDER TO COME BACK AND LISTEN TO HIS DEGRADING REMARKS. THIS BEHAVIOR IS IN-DIRECT VIOLATION OF PD 01.014.110(A), AND 03.03.130. RELIEF SOUGHT: EXHAUSTION ONLY, PURSUANT TO 42 USC 1983. WHERE IT IS CLEAR THAT THE RACIST WHICH HAS BEEN COMPLAINED OF IS SUPPORTED, CONDONE, AND VALUED. SO, GRIEVANT ONLY SEEKS TO EXHAUSTION THESE INADEQUATE REMEDIES. WHERE, IT IS CLEAR NOTHING WILL EVER BE DONE ABOUT THIS EMPLOYEES CONDUCT WHERE THIS ADMINISTRATION AGREES WITH IT WHOLE HEARTEDLY. Signed: Dujuan O'Neal. RESPONSE (Grievant Interviewed?) ☑ Yes ☐ No]

(ECF No. 24-3, PageID.115.)

O'Neal claimed that Lemmerman had continuously harassed and degraded him, and that Lemmerman immediately pulled O'Neal aside to harass O'Neal about "BITCHING" to Lemmerman's supervisor. (*Id*.)

The grievance was denied at Step I. (*Id*., PageID.116.) The denial was upheld through Step III. (*Id*., PageID.112.114.)

Because O'Neal appealed the grievance through Step III, O'Neal satisfied the administrative requirements set forth in MDOC policies. Thus, the undersigned concludes that O'Neal properly exhausted his retaliation claim against Lemmerman for events taking place on September 29, 2018.

### VII. Recommendation

The undersigned respectfully recommends that this Court:

- dismiss all of O'Neal's retaliation claims against Defendants Johnson, Wonnacott and McKinney without prejudice because he failed to exhaust his administrative remedies with respect to these claims,

- deny Defendants' summary judgment motion with regard to O'Neal's retaliation against Lemmerman for events on September 29, 2018.

Dated:  January 27, 2020 /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P.

18

72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).