UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DUJUAN O'NEAL #203912,                               Case No. 2:19-cv-00032

        Plaintiff,                                        Hon. Gordon J. Quist
                                                          U.S. District Judge
v.

JOHN LEMMERMAN,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Corrections Officer (CO) Lemmerman's motion for summary judgment. (ECF No. 45.)

State prisoner DuJuan O'Neal filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 28, 2019. (ECF No. 1.) O'Neal's original complaint stated claims against five defendants. Four of the five defendants have been dismissed from the case. O'Neal's sole remaining claim is a First Amendment retaliation claim against CO Lemmerman based on an incident at Chippewa Correctional Facility (URF) on September 29, 2018.

CO Lemmernan asserts that O'Neal has failed to establish a genuine issue of material fact relating to the second element of a retaliation claim: the requirement that a plaintiff show that the defendant took an adverse action against the plaintiff that would deter a person of ordinary firmness from engaging in protected conduct.

1

CO Lemmerman also argues that O'Neal's claim is barred by the doctrine of qualified immunity. O'Neal responded and CO Lemmerman replied. (ECF Nos. 47, 48.)

The undersigned that genuine issues of material fact remain. Accordingly, the undersigned respectfully recommends that the Court deny CO Lemmerman's motion.

## II.     Additional Relevant Procedural History

O'Neal initiated this action by filing a verified complaint in federal court on January 28, 2019. (ECF No. 1.)

The Court issued a screening opinion and order that dismissed all First Amendment retaliation claims against one of the named defendants for failure to state a claim. (ECF Nos. 5, 6.)

On August 6, 2019, Defendants filed a summary judgment motion and supporting brief on the issue of exhaustion. (ECF No. 23, 24.) O'Neal responded and Defendants replied. (ECF Nos. 28, 30.) As noted above, the undersigned issued a R&R that recommended dismissal of all claims against all defendants, except for the retaliation claim against CO Lemmerman for events on September 29, 2018. (ECF No. 32.) The Court adopted the R&R. (ECF No. 35.)

## III.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Analysis

### A. Clarification of Claim

As a preliminary issue, the parties disagree as to what O'Neal's remaining claim is. This Court's Order adopting the prior R&R confirmed that O'Neal failed to exhaust all of his claims except for his retaliation claim arising on September 29, 2018. (ECF No. 35, PageID.307.) At that point, the parties' interpretation diverges. Citing to clarifying comments O'Neal made during his deposition, CO Lemmerman, asserts that the remaining claim is based on an allegation that he called O'Neal a "rat" or "snitch" in front of other prisoners in retaliation for complaining to CO Lemmerman's immediate supervisor about CO Lemmerman. (ECF No. 46, PageID.335-336; ECF No. 48, PageID.408.) O'Neal, on the other hand, contends that the claim is based on the misconduct tickets that CO Lemmerman issued him on September 29, 2018, in retaliation for letters that O'Neal sent to the Warden. (ECF No. 47, PageID.390-391.)

3

CO Lemmerman correctly notes that O'Neal's remaining claim cannot be based on a retaliatory misconduct ticket even though Lemmerman wrote tickets against O'Neal on or about September 29, 2018. The prior R&R (ECF No. 32) recommended the dismissal of O'Neal's claims based on the issuance of misconduct tickets for a failure to properly exhaust the claim that these tickets were retaliatory. (ECF No. 32, PageID.239-41.)

Thus, the only remaining retaliation claim is based on events that took place on or about September 29, 2018, aside from the issuance of misconduct tickets. In his complaint, O'Neal alleged the following:

> 17.) Defendant Winncott told Plaintiff: "You better give up the affidavits referred to in the grievance." Plaintiff refused to. Lt. Pawley came to the unit and addressed the issues which were discussed between Plaintiff and Lt. Pawley. As soon as Lt. Pawley left the unit, Defendant called Plaintiff to the desk, and stated: "What did you expect would happen by going to my supervisor with your BITCHING. Now you just got your stupid black-ass another ticket."

(ECF No. 1, PageID.7.)

The grievance associated with events on September 29, 2018, is **URF-18-10-2841-17b**. (*Id.*) In that grievance, O'Neal complained about CO Lemmerman calling him names because he spoke to Lt. Pawley, CO's Lemmerman's supervisor. (ECF No. 24-3, PageID.115.) O'Neal's Step I grievance is shown below.

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**
> 4835-4247 10/94
> CSJ-247A
>
> Date Received at Step I  10-3-18    Grievance Identifier: URF-11811012841111781
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | O'NEAL, DUJUAN | 203912 | URF | G-1-01 | 09/29/18 | 10/01/18 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 09/30/18
> If none, explain why. GRIEVANT SPOKE WITH LT. PAWLEY ABOUT THE CONSISTENT HARASSMENT, AND DEGRADATION ISSUED BY SPECIFICALLY C/O LEMMERMAN. WHO SAID HE WOULD E-MAIL THE RUM ABOUT MOVING ME.
>
> STAFF: C/O LEMMERMAN
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. ON 09/29/18, GRIEVANT WAS SENT TO THE CONTROL CENTER, FOR CLASS II MISCONDUCT FOR OUT OF PLACE, WRITTEN BY C/O LEMMERMAN, FOR GOING TO RESTROOM WITHOUT AUTHORIZATION WHILE ON SANCTIONS. DURING REVIEW I EXPLAINED TO LT. PAWLEY THE SITUATION, AT WHICH TIME HE INDICATED THAT HE WOULD E-MAIL THE RUM ABOUT A MOVE. AT 1:05-1:15, LT. PAWLEY WAS IN G-UNIT, TALKING TO C/O LEMMERMAN. (THIS IS A BRIEF BACKGROUND NOT THE ISSUE).
>
> ISSUE: RETALIATION C/O LEMMERMAN
> AS SOON AS LT. PAWLEY LEFT THE UNIT GRIEVANT WAS CALLED TO THE DESK BY C/O LEMMERMAN AND ASK WHAT DID I EXPECT TO HAPPEN BY GOING TO HIS SUPERVISOR, WITH MY "BITCHING". HE FURTHER STATED: "NOW YOU JUST GOT YOUR STUPID BLACK ASS ANOTHER TICKET." LEMMERMAN THEN CALLED ME SEVERAL NAMES NONE O'NEAL, AS GRIEVANT ATTEMPTED TO WALK AWAY HE GAVE ME A DIRECT ORDER TO COME BACK AND LISTEN TO HIS DEGRADING REMARKS. THIS BEHAVIOR IS IN-DIRECT VIOLATION OF PD 01.014.110(A), AND 03.03.130.
>
> RELIEF SOUGHT
> EXHAUSTION ONLY, PURSUANT TO 42 USC 1983. WHERE IT IS CLEAR THAT THE RACIST WHICH HAS BEEN COMPLAINED OF IS SUPPORTED, CONDONE, AND VALUED. SO, GRIEVANT ONLY SEEKS TO EXHAUSTION THESE INADEQUATE REMEDIES. WHERE, IT IS CLEAR NOTHING WILL EVER BE DONE ABOUT THIS EMPLOYEES CONDUCT WHERE THIS ADMINISTRATION AGREES WITH IT WHOLE HEARTEDLY
>
> *Dujuan O'Neal*
> Grievant's Signature

(ECF No. 24-3, PageID.115.)

Aside from O'Neal's claim that Lemmerman issued retaliatory misconduct tickets – a claim that would have to be exhausted in the misconduct hearing – O'Neal asserted that Lemmerman called him "several names none O'Neal." (*Id.*)

Lemmerman's counsel asked O'Neal about these comments during O'Neal's deposition. Counsel asked, "[a]nd what comments were those?" (ECF No. 46-2, PageID.350.) O'Neal responded, "[h]e asked me what did I think that that was going to do, said that I was a rat." (*Id.*, PageID.351.)

The declaration provided by prisoner Samuel Mims, #230199, also reflects the use of the rat term. His declaration is shown below.

5

> VERIFIED DECLARATION OF SAMUEL MIMS #230199
> S. Mims, being duly sworn deposes and says as follows:
> 1) I am currently incarcerated at (URF) CHIPPEWA Correctional Facility, 4269 W. M-80, Kincheloe, Michigan 49784 at all relevant times mentioned herein.
> 2) On September 30, 2018 I was locking in c-unit #04, I was in my cube around 12:50-1:20pm when I heard c/o Lemmerman yell out "O'neal #101." Seconds before this I had seen Lt. Pawley sitting in the heating vent talking to Lemmerman.
> 3) I watched O'neal go to the lobby and stand always away from c/o Lemmerman and ask him what did he want?
> 4) Lemmerman yelled out in a loud voice "you telling my supervisors on me you RAT?" O'neal then replied I told him what you did.
> 5) Lemmerman then yelled loudly for everyone to hear, "you are a Rat and a liar O'neal. O'neal just turned to walk away and Lemmerman then yelled you also got a D.D.O coming you Rat bastard.
> 6) This is not the first time I've heard Lemmerman and his partner McKinney call O'neal names. Almost daily when they work they would call O'neal (RAT, nigger, Liar, predator, and dumb ass nigger). They both constantly made threats to keep him on sanction.
> 7) Lemmerman, McKinney and the PC Wonnacott all would sit around and say or listen to these comments being made. Everybody knew they hated O'neal and always made it clear that anybody associating with him would become a target. I S. Mims declare and state under penalty of perjury and 28 USC 1746 that everything stated herein is true and correct.
> EXECUTED ON: 9-30-18
>
> S. Mims #230199, Affiants
> CHIPPEWA Corr. Fac
> 4269 W. M-80
> Kincheloe, MI 49784

(ECF No. 47-1, PageID.404.)

The undersigned will analyze CO Lemmerman's motion based on the conclusion that O'Neal's claim is that Lemmerman verbally abused him on or about September 29, 2018, by calling him a rat after Lt. Pawley left the unit.

### B. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to establish a First Amendment retaliation claim, a plaintiff must prove: (1) that he was engaged in protected conduct; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in

6

that conduct; and (3) that the adverse action was motivated, at least in part, by the protected conduct. *Id*. The Sixth Circuit has repeatedly held that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)). "If the grievances are frivolous, however, this right is not protected." *Id*. "'Abusive or manipulative use of a grievance system [is] not…protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 Fed. App'x. 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

After a prisoner establishes the first two elements, the prisoner must prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has established a burden-shifting rule regarding the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

CO Lemmerman only challenges the second element (whether he committed an adverse action). (ECF No. 46, PageID.337-339.) He argues (1) that calling O'Neal a "rat" or "liar" in front of fellow prisoners is not an adverse action, and (2) that O'Neal failed to present evidence as to whether the other prisoners heard the name calling.

The undersigned concludes that a genuine issue of material fact remains regarding whether Lemmerman's actions constitute an action "that would deter a person of ordinary firmness from engaging in [the protected] conduct." *Thaddeus-X*, 175 F.3d 394. As noted above, prisoner Mims attested that CO Lemmerman called O'Neal a rat and a liar "loudly for everyone to hear." (ECF No. 47-1, PageID.404.) Mims's statement is shown below with highlighting on the critical statement.

> VERIFIED DECLARATION OF SAMUEL MIMS #230199
>
> S. Mims, being duly sworn deposes and says as follows:
>
> 1) I am currently incarcerated at (URF) CHIPPEWA Correctional FACility, 4269 W. M-80, Kincheloe, Michigan 49784 at all relevant times mentioned herein.
> 2) On September 30, 2018 I was locking in c-unit #104, I was in my cube around 12:50-1:20pm when I heard c/o Lemmerman yell out "O'neal #101." Seconds before this I had seen Lt. Pawley sitting in the heating vent talking to Lemmerman.
> 3) I watched O'neal go to the lobby and stand always away from c/o Lemmerman and ask him what did he want?
> 4) Lemmerman yelled out in a loud voice "you telling my supervisors on me you RAT? O'neal then replied I told him what you did.
> 5) **Lemmerman then yelled loudly for everyone to hear, "you are a Rat and a liar O'neal.** O'neal just turned to walk away and Lemmerman then yelled you also got a D.D.O coming you Rat bastard.
> 6) This is not the first time I've heard Lemmerman and his partner Mckinney call O'neal names. Almost daily when they work they would call O'neal (RAt, nigger, Liar, predator, and dumb ass nigger). They both constantly made threats to keep him on sanction.
> 7) Lemmerman, Mckinney and the PC Wonnacott all would sit around and say or listen to these comments being made. Everybody knew they hated O'neal and always made it clear that anybody associating with him would become a target. I S. mims declare and state under penalty of perjury and 28 USC 1746 that everything stated herein is true and correct.
>
> EXECUTED ON: 9-30-18
>
> *Samuel Mims*
> S. Mims #230199, Affiants
> CHIPPEWA Corr. Fac
> 4269 W. M-80
> Kincheloe, MI 49784

8

The undersigned cannot say that CO Lemmerman's alleged statement would not deter a person of ordinary firmness from engaging in the protected conduct. CO Lemmerman denies calling O'Neal a rat on September 29, 2018. (ECF No. 46-3, PageID.357.) Mims and O'Neal disagree. In the opinion of the undersigned, a trier of fact would have to determine the impact CO Lemmerman's statement would have on a person of ordinary firmness based on the totality of the circumstances.

### C. Qualified Immunity Argument

As an alternative argument, CO Lemmerman moves to dismiss O'Neal's constitutional claims by asserting qualified immunity from liability. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the

right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable

> official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

As explained above, a genuine issue of material fact exists regarding whether CO Lemmerman's conduct implicated O'Neal's First Amendment right to engage in protected conduct free of retaliation. For these same reasons, the undersigned concludes that O'Neal's claim cannot be dismissed based on the doctrine of qualified immunity.

### V.     Recommendation

The undersigned respectfully recommends that this Court deny CO Lemmerman's motion for summary judgment (ECF No. 46). If the Court accepts this

recommendation, the only remaining claim is a First Amendment retaliation claim against CO Lemmerman for labeling O'Neal a rat on September 29, 2018, in the presence of other prisoners.

Dated: July 17, 2021        /s/ *Maarten Vermaat*
                            MAARTEN VERMAAT
                            U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).